CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

AUG 03 2023

LAURA A. AUSTIN, CLERK
BY: s/ H. MCDONALD
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Criminal Action No. 4:18-cr-00011 |
| v. | ) |
| | ) |
| PHILLIP DAEKWON MILES, | ) By: Michael F. Urbanski |
| | ) Chief United States District Judge |
| Defendant/Petitioner | ) |

## MEMORANDUM OPINION

On November 28, 2022, Phillip Daekwon Miles, a federal inmate proceeding pro se, filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF No. 1486. The motion was conditionally filed by the Clerk, and Miles was advised that he needed to sign the motion under penalty of perjury, and further was advised that his motion appeared to have been filed outside the one-year limitations period set forth in § 2255(f). ECF No. 1492. On December 22, 2022, Miles filed an amended § 2255 motion. ECF No. 1502. The government responded to Miles' motion on April 28, 2023, and Miles replied on June 7, 2023. ECF Nos. 1527, 1534. After reviewing the briefing, the record, and relevant case law, the court **DENIES in part** Miles' motion to vacate, set aside, or correct his sentence. The court will appoint counsel to represent Miles at an evidentiary hearing to determine whether Miles asked his attorney to file a notice of appeal on his behalf and if so, the timing of any such request.

### I. Background

On November 6, 2018, Miles, along with eleven codefendants, was named in a 40-count superseding indictment charging offenses related to racketeering. According to the

statement of facts (SOF) signed by Miles, he was a member of a criminal organization known as the Rollin 60s Crips ("Rollin 60s"), which is a street gang. Since at least 2015, the Rollin 60s were active in the Western District of Virginia and engaged in criminal activity, including murder and attempted murder, assault resulting in bodily injury, assault with a dangerous weapon, robbery, obstruction of justice, drug distribution and trafficking, and conspiracy to commit those crimes. SOF, ECF No. 983 at 1.

In 2016, members of the Rollin 60s joined forces with another gang, known as the Milla Bloods ("Millas") to facilitate their criminal activities at the expense of a rival gang known as the Billy Bloods ("Billys"). Id. at 4. In June 2016, Miles agreed with other members of the Rollin 60s and the Millas to shoot and potentially kill two individuals, Dwight Harris and Armonti Womack, in an apartment complex. Miles and the other gang members walked into the apartment complex where Harris and Womack were talking with two members of the Millas, whose job it was to distract them. Miles and the other gang members began shooting, injuring Womack and a member of the Millas, Tanasia Coleman. Id. at 3.

In August 2016, members of the Rollin 60s, including Miles, and the Millas gathered in Danville, Virginia. Marcus Davis, the head of the Rollin 60s, and DaShawn Anthony, the head of the Millas, agreed to work together to mutually benefit their respective drug enterprises. Davis also informed the Rollin 60s that they had authority to kill members of the Billys on sight, including the leader of the Billys, Stevie Wallace. Id. at 4.

On August 20, 2016, members of the Rollin 60s, including Miles, and the Millas met in the apartment of one of their members. The group planned to lure Wallace and other members of the Billys to the apartment complex where gang members were fanned out in

the complex and an adjoining parking lot with plans to shoot Wallace to death. At 10:30 that evening, a van pulled into the apartment parking lot and gang members started shooting. The passenger in the van, Christopher Motley, was killed in the gunfire, while the driver, Justion Wilson, was not injured. Id. at 5. Miles and other gang members hid in the apartment of a woman who lived in the complex. In the days following the shooting, Miles gave his firearm to a member of the Millas to sell in order to eliminate evidence of his participation in the murder. Id. at 6.

A few days after the murder of Christopher Motley, Miles and other gang members were riding in Miles' vehicle in the Rollin 60s neighborhood. As they passed a convenience store, Miles pointed out two members of the Billys coming out of the convenience store. In accordance with the directive of gang leaders Davis and Anthony to shoot and kill Billys on sight, passengers in the car began shooting at the members of the Billys and one of the gang members got out of the car and chased after the Billys. After the gang member returned to the car, Miles drove the vehicle away and the gang members hid from police. Id.

The SOF further sets out that Miles conspired with others to distribute and did, in fact, distribute, marijuana on behalf of the racketeering enterprise. Id. at 5. Miles stipulated to the truth of the SOF and acknowledged that if the matter had proceeded to trial, the United States would have proved the allegations beyond a reasonable doubt. Id. at 7.

Miles was charged in 19 counts of the indictment. Superseding Indictment, ECF No. 207 at 1–18. On October 22, 2019, Miles entered into an agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), in which he agreed to plead guilty to Counts 1 and 11 of the superseding indictment. Count 1 charged him with racketeering conspiracy, with special

3

sentencing factors, in violation of 18 U.S.C. §§ 1962(d) and 1963. Plea Agreement, ECF No. 981 at 1–2. Count 11 charged that Miles did knowingly use, carry, brandish, and discharge a firearm during and in relation to a crime of violence for which he could be prosecuted in a court of the United States, that is, a violation of Title 18, United States Code, Section 1959(a)(1) as set forth in Count 10 of the indictment, and in the course of violating 18 U.S.C. § 924(c), caused the death of a person through the use of a firearm, which killing is defined as murder in 18 U.S.C. § 1111(a), all in violation of 18 U.S.C. § 924(j). Count 10 of the indictment charged Miles with violent crime in aid of racketeering, to-wit: murder of Christopher Lamont Motley in violation of Virginia Code §§ 18.2-32 and 18.2-18, all in violation of 18 U.S.C. §§ 2 and 1959(a)(1).[1] Plea Agreement, ECF No. 981 at 2; Superseding Indictment, ECF No. 207 at 13–14.

The government agreed to dismiss any remaining counts at sentencing. Plea Agreement, ECF No. 981 at 3. Both counts carried maximum penalties of life imprisonment. Id. at 1–2. The parties agreed to a sentencing range of 156 to 180 months. Id. at 4. As part of the agreement, Miles waived his right to appeal except for any issue which could not be waived by law and waived his right to collaterally attack his sentence unless the attack was based on ineffective assistance of counsel. Id. at 8.

On September 9, 2020, Miles was sentenced to 60 months on Count 1 and 120 months on Count 11, with the sentences to run consecutively for a total of 180 months. His term of incarceration is to be followed by a 5-year term of supervised release. J., ECF No. 1331. Miles did not appeal his sentence.

---

[1] Offenses under 18 U.S.C. § 1959, "violent crimes in aid of racketeering," are commonly referred to as VICAR crimes.

4

In his motion to vacate, set aside, or correct his sentence, Miles argues that his attorney provided ineffective assistance of counsel in two respects. First, he argues that his attorney was ineffective when he did not move to dismiss Count 11 on the ground that the underlying predicate offense is not a crime of violence. Second, he argues that his attorney was ineffective for failing to file a notice of appeal when Miles asked him to do so.

The government counters that (1) Miles waived his claims in the plea agreement; (2) Miles' motion is untimely filed and procedurally barred; (3) Miles' claim that Count 11 is unconstitutional is without merit; and (4) Miles' counsel was not ineffective for failing to file a notice of appeal.

## II. Analysis

To prevail on a claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States"; (2) that "the court was without jurisdiction to impose such a sentence"; or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A petitioner collaterally attacking his conviction or sentence via a § 2255 petition bears the burden of showing by a preponderance of evidence that he is entitled to relief. White v. United States, 352 F.Supp.2d 684, 687 (E.D. Va. 2004) (citing Miller v. United States, 261 F.2d 546 (4th Cir. 1958), and Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967)).

### A. Effect of Waiver

The government argues that Miles waived the claims he is attempting to bring in his § 2255 motion. As part of the plea agreement, Miles agreed to waive his right to appeal his

5

sentence or conviction or to collaterally attack his conviction or sentence. The language of the waiver is broad: "I waive any right I may have to collaterally attack, in any future proceeding, any order issued in this matter, unless such attack is based on ineffective assistance of counsel, and I agree I will not file any document which seeks to disturb any such order, unless such filing is based on ineffective assistance of counsel." Plea Agreement, ECF No. 981 at 8. Miles further acknowledged that if he filed any court document, other than an appeal based on an issue not otherwise waived in the agreement, or an appeal based on an issue that cannot be waived by law, or a collateral attack based on ineffective assistance of counsel, seeking to disturb any order imposed in the case, his actions would constitute a failure to comply with a provision of the agreement. Id.

A waiver of appeal and collateral attack is valid if the waiver was knowing and voluntary. In the absence of extraordinary circumstances, a properly conducted Rule 11 colloquy establishes the validity of the waiver. United States v. Adams, 814 F.3d 178, 182 (4th Cir. 2016) (citing United States v. Copeland, 707 F.3d 522, 529 (4th Cir. 2012), and United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005)). A court also must determine whether the issue appealed is within the scope of the waiver. Copeland, 707 F.3d at 528.

A complete transcript of the guilty plea colloquy held on October 22, 2019, is not included in the record, although a partial transcript of the colloquy is docketed at ECF No. 1177. However, the minutes of the guilty plea hearing held on October 22, 2019, reflect that Miles answered under oath questions from the court regarding his physical and mental condition and the court advised him of his rights and the nature and possible consequences of his plea. Minutes, ECF No. 980. Miles also signed a form indicating that his plea was

6

made knowingly and voluntarily and without threat of any kind or promises other than those disclosed in open court. Guilty Plea Form, ECF No. 982. Miles does not argue that that the waiver was made unknowingly or involuntarily. Accordingly, the court finds that the waiver is valid.

The court next must consider whether Miles' challenge to his conviction falls within the scope of the appeal waiver. Miles argues that he received ineffective assistance of counsel when his attorney did not move to dismiss Count 11 of the indictment based on United States v. Davis, 139 S.Ct. 2319 (2019), and United States v. Simmons, 999 F.3d 199 (4th Cir. 2021). He also argues that he received ineffective assistance of counsel when his attorney failed to file an appeal on his behalf although Miles asked him to do so. While a direct attack on his conviction based on Davis and Simmons would fall within the scope of the waiver, Miles's allegation that his attorney was ineffective for advising him to plead guilty to Count 11 in light of Davis and Simmons does not, because claims of ineffective assistance of counsel were excluded from the waiver. Nor does his allegation that his attorney was ineffective for failing to file a notice of appeal when asked to do so fall within the scope of the waiver. Accordingly, Miles' claims based on ineffective assistance of counsel were not waived in the plea agreement and will be addressed below.

### B. Timeliness of Motion

The government also moves to dismiss Miles' motion as untimely. Petitioners seeking relief under 18 U.S.C. § 2255 must file within the one-year statute of limitations set out in the statute. The period begins to run from the latest of (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion

created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f).

In rare circumstances, a defendant is entitled to equitable tolling of the statute of limitations. Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003). "Equitable tolling of petitions for collateral review is available only when a defendant demonstrates '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" Whiteside v. United States, 775 F.3d 180, 184 (4th Cir. 2014) (quoting Holland v. Florida, 560 U.S. 631, 649 (2010)). Under the "extraordinary circumstances" test, a movant must show "(1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." Rouse, 339 F.3d at 246. "Principles of equitable tolling do not extend to garden variety claims of excusable neglect." Id. (citing Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)).

Miles' conviction became final on September 23, 2020, which was fourteen days after the court entered judgment in his case. See Clay v. United States, 537 U.S. 522, 532 (2003); Fed. R. App. P. 4(b)(1)(A). Using that date as the starting point, the one-year limitations period for filing his § 2255 motion expired on September 23, 2021. Because he did not file

his motion until November 28, 2022, approximately fourteen months after the deadline ran, it was untimely under § 2255(f)(1).

Miles asserts that at some point between September 12, 2020, and November 2021, he asked his trial attorneys, Cary Bowen, and Tyson Daniel, via telephone, to "file [his] appeal, concerning [his] plea agreement." He said he therefore was under the impression that his attorneys had filed a notice of appeal on his behalf and did not learn until May 2022 that the appeal was not filed. Affidavit of Phillip Miles, ECF No. 1502-1.

The government responds that Miles' reason for late filing is not credible, because he has provided no evidence to support his assertion that he asked his attorneys to file a notice of appeal on his behalf. In addition, Miles has not explained why, if he learned on May 7, 2022, that his attorneys had not filed an appeal, he waited an additional seven months before filing his § 2255 motion. Finally, the government points out that one of Miles' co-defendants, KaNas Trent, has filed a virtually identical § 2255 motion and makes the same claim regarding his late filing, i.e., that between September 2020 and October 2021 he repeatedly asked his attorney to file a notice of appeal on his behalf but did not learn until May 2022 that the attorney had not filed the appeal. See ECF No. 1503 in United States v. Trent, No. 4:18cr00011 (W.D. Va. Doc. filed Jan. 3, 2023).

Miles appears to be arguing that he did not learn that his attorney did not file his appeal until May 7, 2022, and that under § 2255(f)(4), the statute of limitations did not begin to run until that day. For purposes of § 2255(f)(4), the statute of limitations begins to run when the petitioner knows, or through the exercise of due diligence could have discovered, the important facts and not when he recognizes their legal significance. United States v.

9

Caro, 683 F. App'x 232, 233 (4th Cir. 2008) (citing Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000)). The test under § 2255(f)(4) is an objective one, requiring in this case for the court to determine when a duly diligent person in the petitioner's circumstances would have discovered that his attorney had not filed an appeal on his behalf. See Hannigan v. United States, 131 F.Supp.3d 480, 488 (E.D. N.C. 2015) (citing Wims. V. United States, 225 F.3d 186, 190 (2d Cir. 2000)). Due diligence does not require maximum feasible diligence, but only reasonable diligence. A petitioner need not exhaust every imaginable option but should make reasonable efforts. United States v. Longshore, 644 F.Supp.2d 658, 661 (D. Md. 2009) (citing Aron v. United States, 291 F.3d 708, 712 (11th Cir. 2002) and Wims, 225 F.3d at 190 n. 4).

Miles avers that between September 12, 2020, and November 2021, he asked his attorneys to file a notice of appeal. Notably, he does not describe any response by the attorneys, or indicate whether he called them one time, or more than one time during that time frame. Any request by Miles made after September 23, 2020, would have been untimely. If Miles asked his attorneys to file an appeal prior to September 23, 2020, he then waited twenty months, or until May 2022, to inquire about whether an appeal had been filed, and waited an additional seven months to file his § 2255 motion. If he made the request in November 2021, it would have been untimely by fourteen months, and he then waited an additional six months, or until May 2022, to inquire about whether an appeal had been filed, and waited another seven months to file his § 2255 motion.

Although the test of whether a defendant has been diligent in pursuing his rights is an objective one, the due diligence inquiry is individualized. The court looks at "the prisoner's

10

conditions of confinement, a prisoner's ability to communicate with court and counsel, and communications between the prisoner and the prisoner's counsel and between the prisoner and the court." Hannigan, 131 F.Supp.3d at 488. Due diligence "is an inexact measure of how much delay is too much." Johnson v. United States, 544 U.S. 295, 309 n. 7 (2005). In Ryan v. United States, 657 F.3d 604, 607 (7th Cir. 2011) the court commented, "No rule of thumb emerges from the cases on how long prisoners may take to discover their lawyers' missteps, and we hesitate to pick a magic number."

Some courts have found that delays of two to five months before inquiring about the status of an appeal are reasonable. See Ryan, 657 F.3d at 608; Granger v. Hurt, 90 F. App'x 97, 100 (6th Cir. 2004); Wims, 225 F.3d at 191; Powell v. United States, No. 1:12CR348-1, 1:13CV1052, 2015 WL 3440830 at *5, n.7 (M.D.N.C. May 28, 2015); McKiver v. United States, No. 1:12CR71-1, 1:13CV1091, 2015 WL 1243298, at *4 (M.D.N.C. Mar. 18, 2015). Other courts have found that a year-long delay in inquiring about an appeal is reasonable. See Ragin v. Clarke, No. 3:18CV367, 2019 WL 332804, at *3 (E.D. Va. Jan. 25, 2019); Hollway v. Walrath, No. 3:17CV683-HEH, 2018 WL 2452955, at *3 (E.D. Va. May 31, 2018); Tharrington v. Director, Va Dept. of Corrections, No. 3:14CV720, 2015 WL 4606174, at *4 (E.D. Va. July 30, 2015).

Conversely, at least one court found that a two-and-a-half-month delay in inquiring about the status of an appeal was too long. See United States v. Proctor, No. 3:17CR57-HEH, 2021 WL 4524175, at *2 (E.D. Va. Oct. 1, 2021). Other courts have found that eight-month, ten-month, and twelve-month waits are too long. See Anjulo-Lopez v. United States, 541 F.3d 814, 818–19 (4th Cir. 2008); Montenegro v. United States, 248 F.3d 585, 589 (7th

11

Cir. 2001), overruled on other grounds by Ashley v. United States, 266 F.3d 671, 674–75 (7th Cir. 2001)); Hairston v. United States, No. 4:05cr00022-1, 2008 WL 4809165, at *3 (W.D. Va. Nov. 4, 2008).

At this point, the court does not have enough information to determine whether Miles acted diligently in pursuing his § 2255 motion. Although the government argues that Miles' claims are not credible, it provided no evidence to rebut his assertions. Miles' allegations, although vague and nonspecific, were made under penalty of perjury. Aff., ECF No. 1502-1. The Fourth Circuit has held that "[u]nless it is clear from the pleadings, files, and records that the prisoner is not entitled to relief, § 2255 makes an evidentiary hearing mandatory." United States v. Stokes, 112 F. App'x. 905, 906 (4th Cir. 2004). As discussed below, because an attorney renders ineffective assistance if he does not file a notice of appeal when a client asks him to do so, justice requires that an evidentiary hearing be held so that the court may determine whether Miles asked his attorneys to file an appeal on his behalf, and if so, when. See also Ogun v. United States, No. 4:13cv91, 2014 WL 7140431, at *2 (E.D. Va. Dec. 12, 2014) ("When it is unclear whether the Petitioner unequivocally instructed his attorney to file a timely notice of appeal, the court should hold an evidentiary hearing.") The hearing will address only the timeliness of Miles' claim that his attorney was ineffective for failing to file a notice of appeal on his behalf because it is clear that his attorney was not ineffective for failing to challenge Count 11.

### C. Ineffective Assistance of Counsel

Criminal defendants have a Sixth Amendment right to effective legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish that counsel's assistance

was not reasonably effective, a defendant must satisfy a two-prong analysis: he must show both that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's alleged deficient performance. Strickland, 466 U.S. at 669.

When considering the reasonableness prong of Strickland, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also Gray v. Branker, 529 F.3d 220, 228–29 (4th Cir. 2008). "The performance of counsel is measured in terms of 'reasonableness under prevailing professional norms.'" Gray, 529 F.3d at 228 (quoting Strickland, 466 U.S. at 688). The court must judge counsel "on the facts of the particular case," and assess counsel's performance "from counsel's perspective at the time." Strickland, 466 U.S. at 689.

In the context of failure to file a notice of appeal, the Supreme Court has held that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). This is true even when a defendant has waived the right to appeal as part of a plea agreement. Garza v. Idaho, 139 S.Ct. 738, 747 (2019); United States v. Poindexter, 492 F.3d 263, 273 (4th Cir. 2007). Filing a notice of appeal is a "purely ministerial task that imposes no great burden on counsel." Flores-Ortega, 528 U.S. at 474. It typically takes place during a compressed period of time and the defendant likely will not have important documents from the trial court and may well be in custody, making communication with counsel difficult. Garza, 139 S.Ct. at 745. Filing requirements are simple, reflecting that claims are likely to be ill-defined or unknown at this stage. Id. The defendant has the authority to decide whether to file a notice of appeal, while appellate counsel decides what specific arguments to make.

13

Id. at 746. "In other words, filing a notice of appeal is, generally speaking, a simple, nonsubstantive act that is within the defendant's prerogative." Id.

To satisfy the prejudice prong of Strickland, a defendant generally must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. However, "when counsel fails to file a requested appeal, a defendant is entitled to an appeal without showing that his appeal would likely have had merit." Peguero v. United States, 526 U.S. 23, 28 (1999) (citing Rodriquez v. United States, 395 U.S. 327, 329–330 (1969)).

### (1) Constitutionality of Count 11

Miles argues that his attorneys were ineffective for failing to move to dismiss Count 11 as unconstitutional because the underlying predicate offense was not a "crime of violence" for purposes of conviction under 18 U.S.C. § 924(j), citing in support Davis and Simmons. However, neither of these cases offers Miles any relief.

Section 924(c) authorizes higher penalties for defendants convicted of using or carrying a firearm "during and in relation to," or possessing a firearm "in furtherance of," any federal "crime of violence or drug trafficking crime." Davis, 139 S.Ct. at 2324 (citing § 924(c)(1)(A)). The statute defines the term "crime of violence" in two subparts as follows:

> (3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and—
>
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c). Section 924(c)(3)(A) is known as the "force clause" or "elements clause," and § 924(c)(3)(B) is known as the "residual clause." Davis, 139 S.Ct. at 2324; United States v. Roof, 10 F.4th 314, 398 (4th Cir. 2021). Following the Supreme Court precedent set in Johnson v. United States, 576 U.S. 591 (2015), and Sessions v. Dimaya, 138 S.Ct. 1204 (2018), the Court held in Davis that the "residual clause" of § 924(c)(3)(B) was unconstitutionally vague. See discussion, Davis, 139 S.Ct. 2325–2336.

Miles asserts, correctly, that with the residual clause declared unconstitutional, the issue in his case is whether his predicate offense is a "crime of violence" under the force clause. Miles also asserts, correctly, that RICO conspiracy is not considered a "crime of violence" for purposes of the force clause in § 924(c). In Simmons, the Fourth Circuit applied the categorical approach to the RICO conspiracy statute, 18 U.S.C. § 1962(d), and determined that convictions for RICO conspiracy and aggravated RICO conspiracy are not crimes of violence for purposes of 18 U.S.C. § 924(c) because they can be committed without the use, attempted use, or threatened use of physical force. See discussion, Simmons, 11 F.4th at 253–261.

However, neither Davis nor Simmons supports the conclusion that Miles' Count 11 conviction was unconstitutional, because his § 924(j) conviction was not predicated on his Count 1 RICO conspiracy conviction. Rather, it was predicated on Count 10 of the Indictment, "Violent Crime in Aid of Racketeering, to-wit: Murder of Christopher Lamont

15

Motley." Superseding Indictment, ECF No. 207 at 13–14. The relevant language from Count 10 is the following:

> On or about August 20, 2016, in the Western District of Virginia, for the purpose of maintaining and increasing position in the Rollin 60s, an enterprise engaged in racketeering activity, ... PHILLIP DAEKWON MILES ... did murder Christopher Lamont Motley, in violation of Virginia Code Sections 18.2-32, 18.2-18.
>
> All in violation of Title 18, United States Code, Sections 2 and 1959(a)(1).

Id. The Fourth Circuit has held that VICAR murder is a crime of violence for purposes of § 924(c).[2] United States v. Mathis, 932 F.3d 242, 265 (4th Cir. 2019). See also United States v. Bran, No. 3:12CR131, 2021 WL 4099011, at *4 (E.D. Va. Sept. 8, 2021) (finding that conviction for VICAR murder served as valid predicate offense for conviction under 18 U.S.C. §§ 924(c)(1)(A) and (j)); United States v. Davis, No. 4:18-cr-11, 2019 WL 3307235, at *3–7 (W.D. Va. July 23, 2019) (rejecting argument that murder, whether defined generically or as set forth in Va. Code § 18.2-32, is not a crime of violence for purposes of § 923(c)(3)(A)); and Gordillo Portocarrero v. United States, No. 1:16-cv-00763 (LMB), No. 1:10-cr-00066-1 (LMB), 2019 WL 181119, at *7–8 (E.D. Va. Jan. 11, 2019) (finding that attempted murder is a crime of violence under the force clause set forth in § 924(c)(3)(A)). Accordingly, Miles cannot rely on the fact that RICO conspiracy is not a crime of violence

---

[2] It is not relevant that Miles was convicted under § 924(j) rather than § 924(c) because § 924(c) contains the controlling definition for § 924(j). Roof, 10 F.4th at 398. Also, because the definition of "crime of violence" in § 924(c) is almost identical to the definition of "violent felony" in the Armed Career Criminal Act (ACCA), decisions interpreting one such definition are persuasive as to the meaning of others. Id., n.61.

16

for purposes of his § 924(c) conviction, because the predicate offense in his case was not RICO conspiracy but VICAR murder.[3]

Accordingly, because there was no constitutional basis for Miles' attorneys to seek dismissal of Count 11, they was not ineffective for failing to do so. Miles' argument to the contrary is without merit and therefore this claim is **DISMISSED**.

### (2) Failure to File Appeal

As discussed above, because it is well-established that an attorney who disregards instructions from a defendant to file a notice of appeal acts in a professionally unreasonable manner and a defendant need not show that an appeal would have merit, the court must determine if Miles asked his attorney to file a notice of appeal and if so, when he made the request. Accordingly, counsel will be appointed to represent Miles at an evidentiary hearing, where the issues will be limited to whether Miles asked his attorneys to file a notice of appeal on his behalf and the timing of any such request.

### III. Conclusion

Based on the foregoing, the court **DENIES in part** Miles' § 2255 motion to vacate, set aside, or correct his sentence, ECF No. 1486. Miles' ineffective assistance of counsel claim based on his attorneys' failure to object to the constitutionality of Count 11 is **DISMISSED**. The court will appoint counsel to represent Miles at an evidentiary hearing to

---

[3] Nor does the Supreme Court decision in Borden v. United States, 141 S.Ct. 1817 (2021), offer Miles any relief. In Borden, the Supreme Court held that a criminal offense that requires only a mens rea of recklessness cannot count as a "violent felony" under the elements clause of the ACCA, 18 U.S.C. § 924(e)(2)(B)(i). Borden, 141 S.Ct. at 1834. This is because such offenses "do not require, as the ACCA does, the active employment of force against another person. And they are not the stuff of armed criminals." Id. In United States v. Manley, 52 F.4th 142 (2022), the Fourth Circuit looked at whether VICAR assault and VICAR murder must be committed with a sufficiently culpable mens rea to amount to crimes of violence necessary for conviction under 18 U.S.C. § 924(c) and concluded that both crimes require a mens rea greater than recklessness. Therefore, they are considered crimes of violence for purposes of §§ 924(c) and 924(j).

17

determine whether Miles asked his attorneys to file a notice of appeal on his behalf and if so, the timing of the request.

An appropriate Order will be entered. The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to Miles.

It is so **ORDERED**.

Entered: 08/02/2023

Michael F. Urbanski
Chief United States District Judge